**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

CARL C. MORRIS,
               Appellant,

      v.

DEPARTMENT OF
   TRANSPORTATION,
               Agency.

DOCKET NUMBER
DC-0752-17-0441-I-1

DATE: January 19, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

Carl C. Morris, Prince Frederick, Maryland, pro se.

Paul Sanchez, Esquire, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## REMAND ORDER

¶1      The appellant has filed a petition for review and the agency has filed a cross petition for review of the initial decision, which reversed the appellant's removal and denied his affirmative defenses. For the reasons discussed below, we GRANT the agency's cross petition for review and VACATE the portion of the initial decision that found that the agency failed to prove its charge. We

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

REMAND the appeal for further analysis of the agency's charge and, if necessary, analyses of the nexus between the sustained misconduct and the efficiency of the service, as well as the reasonableness of the penalty. We DENY the appellant's petition for review.

## BACKGROUND

¶2    The appellant most recently held the GS-14 position of Mathematical Statistician at the agency's Office of Statistical and Economic Analysis (OSEA), within the Bureau of Transportation Statistics (BTS). Initial Appeal File (IAF), Tab 4 at 41. In October 2016, the appellant's first-line supervisor—the Assistant Director of OSEA—informed the appellant that the agency was placing him on a performance improvement plan (PIP). *E.g.*, *id*. at 61, 102. She then scheduled a meeting with him to discuss the PIP, later that same day, so the appellant could review the associated materials in the interim. *Id*. at 61-62, 102.

¶3    When the Assistant Director scheduled the aforementioned meeting to discuss the PIP, the appellant requested a neutral observer. *Id*. at 62, 103. The Assistant Director then moved the meeting to the BTS Director's office, but the appellant objected, asserting that the BTS Director was not a neutral observer. *Id*. at 62, 76, 103. He further asserted that if a neutral observer was not arranged, he would consider it a "direct threat to [his] safety." *Id*. at 76. Ultimately, a different third-party observer—the Associate Director of Physical and Technical Security—agreed to attend the PIP meeting. *Id*. at 62, 76, 103.

¶4    At the scheduled PIP meeting with the Assistant Director and the third-party observer, the appellant took out a pair of glasses, then reached into his pocket and pulled out a knife. *Id*. at 62, 103. While the parties have described the exact language the appellant used differently, they all agree that he stated something to the effect of, "This is not a threat. I need to fix my glasses. I always carry a pocketknife." *Id*. at 62, 103, 107; Hearing Transcript, Day 1 (HT1) at 288-89

(testimony of the appellant); Hearing Transcript, Day 2 (HT2) at 374-75 (testimony of the third-party observer), 456 (testimony of the Assistant Director).

¶5       When the PIP meeting ended, the Assistant Director returned to her office and locked the door.  IAF, Tab 4 at 103.  There appears to be no dispute that she found the appellant's actions unsettling.  In both a contemporaneous email she sent to the BTS Director, and a subsequent memorandum she drafted with further details, the Assistant Director described herself as shaking and scared.  *Id*. at 103-04, 107.  A memorandum from the BTS Director reflects similarly, detailing how she went to check on the Assistant Director and found her shaking and crying behind her locked office door.  *Id*. at 100.  The third-party observer's memorandum about the incident described the appellant's behavior as "very inappropriate," and indicated that he had "succeeded in intimidating" the Assistant Director.  *Id*. at 105-06.

¶6       The agency proposed the appellant's removal based on a single charge of conduct unbecoming.  *Id*. at 95-98.  The corresponding narrative provided as follows:

> On Monday October 24, 2016, you met with your supervisor, [the Assistant Director] at approximately 3:00 PM to discuss a Notice of Unacceptable Performance and Opportunity to Improve that was issued to you that morning.  At your behest, [the third-party observer] attended this meeting as a neutral observer.  You started the discussion by stating that the Notice was issued in retaliation for several complaints you had filed with the Departmental Office of Civil Rights and accused [the Assistant Director] of changing the standards and deliverables described in your performance plan.  After explaining that this was untrue, [the Assistant Director] expressed that the purpose of the meeting was not to argue about the contents of the notice but to walk through the plan, provide you an opportunity to ask questions, and set out the first tasks.  You then took out a computer tablet and a pair of black framed glasses.  You reached into the front right pocket of your pants and pulled out a pocket knife while stating, "This is not a threat. I need to fix my glasses."  You then proceeded to adjust the glass frames with your knife.  While engaged in this activity, you looked at [the Assistant Director] and stated, "I always carry a knife."  [The Assistant

Director] quickly ended the meeting after you produced the knife and agreed to send future work requests by email. She returned to her office and locked the door.

[The Assistant Director] prepared a statement to document the October 24th meeting. In this statement she expressed that she found both your words and your actions confusing because she did not recall having ever seen you with glasses before that moment. She also stated that she had never seen you with a knife, nor heard you discuss carrying one on your person. Her statement clearly conveyed that she was fearful for her safety after this incident. This is corroborated by a statement prepared by [the third-party observer]. He explained that he went to [the Assistant Director's] office following the meeting and had to identify himself after knocking before she would unlock her door to let him in. When [the Assistant Director] opened the door to [the third-party observer], she expressed to him that she was very shaken by the appearance of the knife.

[The BTS Director] also provided a statement in which she described [the Assistant Director's] appearance and reaction immediately after the incident. [The BTS Director] indicated that she went to see [the Assistant Director] after receiving her email reporting the incident. [The BTS Director] explained that she had to knock on [the Assistant Director's] locked door and identify herself before [the Assistant Director] opened the door. [The BTS Director] observed that, when [the Assistant Director] finally did open the door, she was shaking and crying. [The BTS Director] told her to go home and suggested that she telework the following Monday, October 31, 2016, so that she would not have to be in the office with you.

After meeting with [the Assistant Director], [the BTS Director] sent an email to [the Assistant Secretary for Research and Technology (OST-R)], and [the Executive Director of OST-R] to notify them of this incident. In this email, she explained that, as a direct result of this incident, [the Assistant Director] no longer felt free to maintain the open door office policy she used to practice. This observation was confirmed in an email [the Assistant Director] sent on October 31, 2016, in which she stated her intent to remain in her locked office while you are present at the worksite. Consequently, you were placed on administrative leave to ensure that you would no longer disrupt the office environment.

While it is unclear whether the knife you exhibited exceeded the 2-and-a-half inch limit that is permissible on Federal facilities, it is my belief that the timing and circumstances surrounding this incident

> convey your deliberate efforts to intimidate and cause anxiety to your supervisor. As such your conduct was disruptive to the workplace and cannot be tolerated.

*Id*. at 95-96. In the penalty portion of the proposed removal, the proposing official described how the agency had previously issued the appellant a written reprimand for rude and disrespectful behavior in one instance and a 5-day suspension for conduct unbecoming and failure to follow supervisory instructions in another. *Id*. at 96. He further described how the appellant's latest actions reflected an increase in the severity of his misconduct, and the Assistant Director no longer felt that she could move about the office freely and safely. *Id*. at 96-97.

¶7 The appellant responded to his proposed removal, acknowledging that he pulled out the knife during the PIP meeting, but denying that he did so to purposefully intimidate or scare the Assistant Director. *Id*. at 51-63. The deciding official sustained the removal, *id*. at 41-44, and this appeal followed, IAF, Tab 1.

¶8 After developing the record and holding the requested hearing, the administrative judge reversed the appellant's removal. IAF, Tab 83, Initial Decision (ID) at 1. He found that the gravamen of the agency's charge was that the appellant deliberately intimidated his supervisor, thereby disrupting the workplace, but the charge failed because the agency was unable to prove the appellant's intent. ID at 2-9. The administrative judge then considered but denied the appellant's claims of equal employment opportunity (EEO) reprisal and discrimination, ID at 9-13, whistleblower reprisal, ID at 13-16, harmful procedural error, and violation of his right to due process, ID at 16-17.

¶9 The appellant has filed a petition for review, where he appears to reassert each of the affirmative defenses addressed below. Petition for Review (PFR) File, Tab 1. The agency has filed a cross petition for review, arguing that the administrative judge erred in finding the charge unproven. PFR File, Tab 3. Each party filed a response. PFR File, Tabs 7-8.

¶10    In addition to the aforementioned pleadings, the appellant moved to dismiss the agency's cross petition for review because the agency indicated that it intended to provide interim relief, but it had not done so by the time of its cross petition.  PFR File, Tab 6 (referencing PFR File, Tab 4 at 4).  That motion is denied.  The agency presented argument and evidence that it did provide interim relief over the weeks that followed its cross petition for review, and the appellant has not presented any argument or evidence to the contrary, despite having the opportunity to do so.  *Compare* PFR File, Tab 9 (the Board's show cause order, requesting additional information about the status of interim relief from both parties), *with* PFR File, Tab 10 (the agency's response, with argument and evidence that it had reinstated the appellant and provided him with back pay).

## DISCUSSION OF ARGUMENTS ON REVIEW

We remand this appeal for further analysis of the agency's charge.

¶11    As previously stated, the administrative judge found that the gravamen of the agency's conduct unbecoming charge was that the appellant engaged in "deliberate efforts to intimidate and cause anxiety to [his] supervisor," thereby causing "disrupti[on] to the workplace."  IAF, Tab 77 at 1; ID at 2.  We agree with this interpretation of the charge, which the agency does not dispute in its cross petition for review.  What the agency does dispute is the administrative judge's conclusion that the agency failed to establish the requisite element of intent.  *E.g.*, PFR File, Tab 3 at 9-18.  On that point, we find that remand is required for further adjudication.

¶12    There is little disagreement about the appellant's actions, despite the substantial disagreement about what he intended and some conflicting accounts about his particular word choice, the timing of his actions, and the size of the knife.  Most notably, the appellant has acknowledged that he insisted upon a neutral observer at the PIP meeting for his own safety and, during that meeting,

he pulled out a knife while stating, "this is not a threat," and indicating that he needed to fix his glasses. IAF, Tab 4 at 62, 76.

¶13 There is also an abundance of evidence reflecting the impact of the appellant's actions. Contemporaneous documents and hearing testimony from multiple individuals all demonstrate that the Assistant Director was unsettled by the appellant's actions, so much so that she returned to her office shaking and crying; she locked her door out of fear for her safety; and she limited the amount of time spent outside her locked office. *E.g.*, IAF, Tab 4 at 100, 103-07; HT1 at 93, 96 (testimony of the BTS Director); HT2 at 387 (testimony of the third-party observer), 469 (testimony of the Assistant Director). While the appellant has offered rationales for why he did not believe the Assistant Director should have been fearful, including his assertion that she is a "Texan with a black belt," IAF, Tab 4 at 53, he has not substantively or persuasively argued that she was not fearful. In fact, the appellant asserted that the Assistant Director was "extremely nervous" even before he pulled out his knife.[2] HT1 at 272-73 (testimony of the appellant). He also acknowledged that he was upset with the Assistant Director, he had animosity toward her, and his PIP meeting with her was heated. *Id*. at 274, 281, 288 (testimony of the appellant). Further, the appellant testified that, in hindsight, "it was a misjudgment to pull [his] pocket knife out of [his] pocket in that situation." *Id*. at 283 (testimony of the appellant).

¶14 So, the question that remains is whether the appellant intended to intimidate his supervisor. The administrative judge found that the agency failed to prove this element. ID at 4-9. He determined that there was no basis for concluding that the appellant had any reason for his actions other than the reason the appellant provided—that he only pulled out a knife during the PIP meeting to

---

[2] The appellant surmised that the Assistant Director was most likely nervous because she was being manipulated and coerced into lying about both the appellant's conduct and performance to ultimately have him removed, and she knew what she was doing was wrong. HT1 at 273-82 (testimony of the appellant).

adjust his glasses. ID at 8. The administrative judge characterized this explanation as "unchallenged." ID at 9. However, one of the allegations underlying the agency's charge did challenge that explanation. The agency alleged that it believed the appellant had deliberately acted as he did to intimidate his supervisor. IAF, Tab 4 at 96. Moreover, that supervisor and witness to the appellant's actions, the Assistant Director, provided direct testimony about what she believed the appellant intended—that he "clearly wanted [her] to feel threatened," and "very clearly wanted [her] to feel that [she] would not be safe in the office." HT2 at 537 (testimony of the Assistant Director). Accordingly, we disagree with the administrative judge's description of the appellant's explanation as unchallenged.

¶15        At the heart of this appeal is a dispute about whether the appellant intended to merely adjust his glasses, as the appellant alleged, or intended to intimidate his supervisor under the guise of adjusting his glasses, as the agency alleged. Resolution of that dispute requires a thorough credibility determination about the appellant's explanation for his actions. To resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version he believes, and explain in detail why he found the chosen version more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). Although the administrative judge did not explicitly indicate that he was making a credibility determination, he generally alluded to some credibility factors to determine that the agency failed to prove the appellant's intent. To the extent that this constituted a credibility determination, we find it incomplete.

¶16 The administrative judge found that the appellant had consistently provided the same explanation for his actions—a loose screw in his glasses—and that explanation was consistent with all witnesses' recollection of him then acting as if he was using the knife to adjust his glasses. ID at 7-8. He further found that while this may have been "odd behavior," it was plausible that the appellant intended to adjust his glasses without intending to intimidate his supervisor. ID at 8. However, there were other factors that the administrative judge did not explicitly address in the initial decision, which we find especially relevant.

¶17 For example, while the appellant's explanation for his actions is plausible, it seems somewhat improbable that the appellant had no ulterior motive for displaying his knife, given the attendant circumstances. Among other things, those circumstances include the appellant's report from a few months before that his family was concerned management may try to kill him, IAF, Tab 82 at 1-2, his demand for a third-party observer at the PIP meeting for his own safety, IAF, Tab 4 at 76, his admitted animosity toward the Assistant Director and belief that she had concocted unfounded rationales for the PIP as a pretext to have him removed, HT1 at 273-82 (testimony of the appellant), and the appellant's other actions during the PIP meeting, which the third-party observer described as argumentative and the administrative judge described as cantankerous, IAF, Tab 4 at 105; HT2 at 374, 378 (testimony of the third-party observer); ID at 8.

¶18 Another factor that may weigh against the appellant's credibility about his intent when displaying the knife is his character, which the administrative judge described elsewhere in the initial decision as including extreme and volatile sensitivity to criticism. *See* ID at 11. With that description, the administrative judge also recounted a prior instance where the appellant reportedly yelled at the Assistant Director and others during a discussion of his work performance, the numerous witnesses to the incident, and the appellant's apparent claim that these witnesses were conspiring to make false claims about the incident. *See* ID at 11-12. If the appellant provided false testimony about the incident, that could

call into question the truthfulness of the appellant's claims concerning his intent with the knife. *See Skellham v. U.S. Postal Service*, 90 M.S.P.R. 361, ¶ 13 (2001) (stating that an individual's false statement regarding one matter may call into question her credibility regarding other matters as well).

¶19    One of the other factors that may be relevant to the question at hand is the various witnesses' demeanor. The administrative judge, as the hearing officer, is in the best position to assess the various witnesses' demeanor. *Parker v. Department of Veterans Affairs*, 122 M.S.P.R. 353, ¶ 7 (2015); *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).

¶20    In sum, the appellant's intent was disputed and the administrative judge erred in suggesting otherwise. Plus, the administrative judge did not make the detailed credibility findings necessary to decide the appellant's intent. We therefore vacate his determination that the agency failed to prove the intent element of its charge, and we remand the matter for further adjudication. In a remand initial decision, the administrative judge should ensure that the analysis of the appellant's intent and the agency's charge includes credibility determinations that consider the factors we discussed above and any others the administrative judge deems relevant.

The appellant failed to establish his affirmative defenses.

¶21    The administrative judge considered but denied the appellant's claims of EEO reprisal and discrimination, ID at 9-13, whistleblower reprisal, ID at 13-16, harmful procedural error, and violation of his right to due process, ID at 16-17. On review, the appellant has at least alluded to each, so we will address each in turn. PFR File, Tab 1 at 4-25.

*Discrimination and EEO reprisal*

¶22    Throughout this appeal, both below and on review, the appellant has presented exhaustive allegations of wrongdoing that are, at times, difficult to

reconcile with the specific matters at issue in this removal appeal.[3]  *E.g.,* IAF, Tab 70 at 6-13; PFR File, Tab 1 at 4-26.  For example, the appellant's statement of facts on review contains assertions of wrongdoing dating back to 2010, six years before his removal.  PFR File, Tab 1 at 6-21.  Among them are allegations that management has subjected both him and others to discrimination and reprisal through a pattern of defamation, the withholding of promotions, the imposition of discipline, and the lowering of performance ratings.  *E.g., id.,* at 4, 7.

¶23      To the extent that the appellant presented discrimination and EEO reprisal affirmative defenses, the administrative judge summarized them as follows:  The appellant filed 11 EEO complaints between February 2010 and August 2016.  ID at 11.  He also had an accident in 2011, resulting in reconstructive surgery and a slight facial disfigurement.  *Id.*  According to the appellant, the agency both retaliated against him based on his EEO activity and discriminated against him based on a perception that he had a disability—brain damage.  *Id.*  He attempted to support these claims by recounting a lengthy history of contentiousness.  *Id.*

¶24      In analyzing the appellant's claims of discrimination and retaliation for prior EEO activity, the administrative judge applied the standard set forth by the Board in *Savage v. Department of the Army,* 122 M.S.P.R. 612 (2015), *clarified by Gardner v. Department of Veterans Affairs,* 123 M.S.P.R. 647, ¶¶ 30-31 (2016), *and Pridgen v. Office of Management and Budget,* 2022 MSPB 31, ¶¶ 23-24.  Applying that standard, the administrative judge found that the appellant failed to prove by preponderant evidence that his perceived disability or his prior EEO activity was a motivating factor in the agency's actions.  ID at 11-13.

---

[3] In a separate individual right of action appeal, the appellant alleged that the agency had committed 33 personnel actions in retaliation for his protected whistleblowing activity, but that case was dismissed for lack of jurisdiction.  *See, e.g., Morris v. Department of Transportation,* MSPB Docket No. DC-1221-17-0355-W-1, Initial Decision (Jan. 12, 2018).  The appellant petitioned for review of that initial decision, and we will issue a separate decision resolving that petition for review.

¶25    Title VII of the Civil Rights Act of 1964, as amended, requires that Federal personnel actions "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). An appellant may prove an affirmative defense of discrimination or retaliation under this Title by showing that the prohibited consideration was at least a motivating factor in the contested personnel action. *Pridgen*, 2022 MSPB 31, ¶¶ 20-24 40-42. This same burden applies to an affirmative defense of disparate treatment disability discrimination. *Id.*, ¶¶ 40, 42. However, to prove a claim of retaliation under the Rehabilitation Act of 1973, the appellant must prove but-for causation, which is a higher burden than motivating factor. *Id.*, ¶¶ 44-48.

¶26    In this case, the administrative judge found that the appellant did not prove that any form of prohibited discrimination or retaliation was a motivating factor in his removal. IAF, Tab 77 at 2-4; ID at 9-11. In short, he found that while the record reflected ongoing workplace dysfunction, that dysfunction was consistently generated by the appellant's extreme sensitivity to criticism and refusal to accept appropriate supervision, not discrimination or EEO reprisal. ID at 11-13. We agree. To the extent that the administrative judge should have applied a but-for rather than a motivating factor standard to some of these claims, the appellant's substantive rights were not prejudiced; because the appellant did not prove motivating factor causation, be necessarily did not prove but-for causation. *See Desjardin v. U.S. Postal Service*, 2023 MSPB 6, ¶ 33 (modifying an initial decision to recognize that the more stringent but-for standard applied because an employee's EEO reprisal claim arose under the Rehabilitation Act, while affirming the administrative judge's conclusion that the employee failed to satisfy even the lesser motivating factor standard); *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶¶ 31-34 (same).

¶27    In his petition for review, the appellant asserts that he "indisputably showed" that "he was treated disparately as compared to before" his 2010 EEO activity. PFR File, Tab 1 at 23. This assertion is accompanied by a citation to a

single document in the record. That document is a timeline he created, dating back to 2005, wherein the appellant identifies things such as his EEO activity, his performance ratings, disciplinary actions, and what he characterizes as physical security threat surveillance. IAF, Tab 69 at 4, Tab 70 at 17. The appellant also asserts that he "indisputably showed" that management began fabricating defamatory rumors about him being dangerous in February 2014, in relation to a perceived disability that became a pretext for his eventual removal. PFR File, Tab 1 at 23.

¶28 Even if the appellant's timeline is an accurate representation of events, we do not find it persuasive. The appellant's timeline identifies 23 dates on which he either made initial EEO contact or filed a formal EEO complaint over 7 years, along with 3 dates on which he was disciplined, 3 dates he identifies as threat surveillance, and the dates of his annual performance ratings. Without more, we do not find the timing of any of these actions particularly suspicious. *See Pridgen,* 2022 MSPB 31, ¶ 24 (describing various types of evidence in support of a discrimination claim, such as direct evidence, suspicious timing, ambiguous statements, behavior towards other in the protected group, and other bits and pieces from which an inference of improper motive might be drawn).

¶29 More broadly, while we have considered all of the appellant's arguments and assertions, to the extent that they are relevant in this removal appeal, we discern no basis for concluding that he has proven either disability discrimination or EEO reprisal by preponderant evidence. The appellant has presented little more than disagreement with the administrative judge's conclusion that the longstanding contentiousness reflected throughout the record is attributable to the appellant, not discrimination or EEO reprisal—a conclusion with which we agree. *See Gardner,* 123 M.S.P.R. 647, ¶¶ 31-32 (finding that an administrative judge properly considered the evidence as a whole in finding that an employee failed to prove her discrimination and EEO reprisal claims, and her arguments on review amounted to mere disagreement).

¶30     We separately note that the appellant alluded to sex discrimination, both below and on review, IAF, Tab 70 at 6-7; PFR File, Tab 1 at 7, 21, but the initial decision only explicitly addressed disability discrimination, ID at 9-13. To the extent that the appellant intended to bring an affirmative defense of sex discrimination separate from his disability discrimination claim, we find that it similarly fails. In vaguely referring to sex discrimination, the appellant cited the same timeline discussed above. *E.g.*, IAF, Tab 70 at 6, 17; PFR File, Tab 1 at 21. That timeline seems to suggest that some women were rated higher than the appellant and some other men between 2010 and 2016, and one "younger female comparator" in particular was promoted from GS-09 to GS-14 over a 5-year period, as the appellant remained a GS-14. IAF, Tab 70 at 6-7, 17. Even if we accept the facts in the timeline as true, the appellant has not directed us to anything that would establish, by preponderant evidence, that his removal was improperly motivated by sex. His speculation, based on vague comparisons and unsupported by persuasive evidence, is insufficient.

### *Whistleblower reprisal*

¶31     When whistleblower reprisal claims are made in the context of an otherwise appealable action, as here, the appellant must prove by preponderant evidence that he made a protected disclosure pursuant to 5 U.S.C. § 2302(b)(8) or engaged in protected activity as defined in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), and (D) and that the disclosure or protected activity was a contributing factor in the personnel action at issue. *Pridgen*, 2022 MSPB 31, ¶ 49; *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 12 (2015); *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 12 (2015); *see* 5 U.S.C. § 1221(e)(1). If the appellant makes this showing, the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the personnel action absent the protected disclosure or activity. *Pridgen*, 2022 MSPB 31, ¶ 49.

¶32     A protected disclosure is a disclosure of information that the appellant reasonably believes evidences any violation of any law, rule, or regulation, gross

mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8); *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 22 (2014). To demonstrate that he had a reasonable belief that he made a protected disclosure, an appellant need prove only that a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the agency's actions evidenced one of the categories of wrongdoing listed in 5 U.S.C. § 2302(b)(8). *Shannon*, 121 M.S.P.R. 221, ¶ 22.

¶33    To prove the contributing factor criterion, an appellant may rely on the knowledge/timing test, i.e., proof that the official taking the personnel action knew of the whistleblowing and that the personnel action occurred within a period of time such that a reasonable person could conclude that the whistleblowing was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1). But the knowledge/timing test is not the only way to demonstrate the contributing factor element. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). The Board will also consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed towards the official taking the action, or whether these individuals had a desire or motive to retaliate against the appellant. *Id.*, ¶ 15.

¶34    Although the appellant generally alleged that his removal was the result of whistleblower reprisal, the administrative judge found that the precise scope and nature of his alleged whistleblowing was largely unclear. ID at 15. He recognized that one alleged disclosure the appellant raised pertained to an EEO complaint. *Id*. (referencing IAF, Tab 70 at 39-40).[4] In short, the appellant emailed several agency officials to assert that the agency's incomplete response to a discovery request was felonious and constituted a possible violation of

---

[4] The administrative judge cited a different piece of evidence, but it appears that this was a typo. *Compare* ID at 15 (citing IAF, Tab 30 at 4-5), *with* IAF, Tab 70 at 39-40.

perjury and obstructions statutes. IAF, Tab 70 at 39-40. The administrative judge also recognized that the appellant referenced complaints he raised about him and a co-worker being bullied by supervisors with respect to work assignments and performance evaluations. ID at 15; *see* Hearing Transcript, Day 3 (HT3) at 557-59 (testimony of coworker), 659-60 (closing argument of the appellant); IAF, Tab 74 at 34-35. However, the administrative judge found that the appellant failed to meet his burden of proving that either of these alleged disclosures was protected. ID at 15-16.

¶35 On review, the appellant alleges that he "documented in the record his disclosures of violations of laws and regulations and abuses of authority from July 2010 on." PFR File, Tab 1 at 5 (citing IAF, Tab 35 at 4; Tab 36 at 4; Tab 37 at 4; Tab 38 at 4; Tab 70 at 17, 39; Tab 74 at 8, 12, 29, 33, 36; Tab 75 at 152, 154, 171, 192, 194, 199, 205, 206, 244, 360-63, 449, 493, 496). Elsewhere in the petition, the appellant characterized his disclosures as ones about perjury, obstruction, and abuses of authority, *id*. at 6, while also referring to a Board decision which recognized that disclosure of an individual's intentionally false statement to the Government Accountability Office or in an EEO investigation could be protected, *id*. at 22 (referencing *Bravo v. Department of Veterans Affairs*, 83 M.S.P.R. 653, ¶ 10 (1999)). The appellant has not otherwise presented any substantive argument pertaining to his burden of proof.

¶36 Although we will recognize and analyze more alleged disclosures than discussed in the initial decision, we agree with the administrative judge's conclusion that the appellant failed to meet his burden. For several of the alleged disclosures the appellant cited, even if we were to assume that they were protected, they fall outside the time frame from which the knowledge/timing test could be satisfied.[5] *Compare* IAF, Tab 74 at 8, 12, 29, 33-36 (evidence of alleged

---

[5] At least some of what the appellant has directed us to was activity protected under 5 U.S.C. § 2302(b)(9)(C), rather than disclosures covered by 5 U.S.C. § 2302(b)(8), because they were complaints to the agency's Office of Inspector General. IAF, Tab 74 at 8-12, Tab 75 at 152; *see Pridgen*, 2022 MSPB 31, ¶ 62 (recognizing that any

disclosures between July 2010 and February 2014), Tab 75 at 152, 154, 171 (same), *with* IAF, Tab 4 at 95-98 (the appellant's proposed removal, dated December 2016); *see Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015) (recognizing that a personnel action taken within approximately 1 to 2 years of an employee's disclosures satisfies the knowledge/timing test for purposes of establishing the contributing factor element). Plus, the appellant has failed to articulate any other basis for us to find that these disclosures were a contributing factor in his removal, and we are aware of none. *See Dorney*, 117 M.S.P.R. 480, ¶¶ 14-15. As detailed throughout this decision, the agency's reasons for taking the personnel action were strong. We find that to be so, even with the outstanding questions of the appellant's credibility and whether he intended the fear and intimidation he most certainly caused. Moreover, it does not appear as if any of these older disclosures implicated the officials taking the removal action or that they would have motivated the pertinent officials to retaliate. IAF, Tab 74 at 8, 12, 29, 33-36, Tab 75 at 152, 154, 171.

¶37　　For several other alleged disclosures that are more recent in time, the appellant has not proven that they are protected. The majority of the evidence the appellant has cited consists of the appellant making vague or conclusory allegations of wrongdoing, without any evidentiary support of either the alleged wrongdoing or the appellant's reasonable belief about the same. *Gabel v. Department of Veterans Affairs*, 2023 MSPB 4, ¶ 6; *see Rzucidlo v. Department of the Army*, 101 M.S.P.R. 616, ¶ 13 (2006) (recognizing that disclosures must be specific and detailed, not vague allegations of wrongdoing regarding broad or imprecise matters). To illustrate, the appellant cited September 2015 emails to several managers in which he vaguely recounts how he once confronted managers for harassment and lying in sworn statements, then later received unsatisfactory performance appraisals and a reprimand. IAF, Tab 35 at 4, Tab 36 at 4, Tab 37

disclosure of information to OIG, regardless of the content, is activity protected under 5 U.S.C. § 2302(b)(9)(C)).

at 4, Tab 38 at 4, Tab 75 at 192, 194, 360-63. He also cited October 2015 notes and emails in which the appellant generally alleged that several officials made false reports about him being a potential security threat. IAF, Tab 75 at 199, 205, 493, 496-97. Next, the appellant cited a June 2016 email in which he alleged that the agency representative in his EEO case withheld material information from his discovery response in violation of perjury and obstructions statutes. IAF, Tab 70 at 39. Lastly, the appellant cited an unsigned and undated document in which he once again appears to allege false statements and obstruction of justice on the part of agency managers. IAF, Tab 75 at 206. Without more, the appellant has not proven, by preponderant evidence, that any of these rise to the level of a protected disclosure. *E.g., Rzucidlo*, 101 M.S.P.R. 616, ¶¶ 17-18 (finding that alleged disclosures were not protected when they consisted of general complaints about how he was treated by the agency and an unsupported allegation that someone lied by complaining of unwelcomed attention).

¶38    In another series of emails the appellant cited, from December 2015, the appellant presented a more specific allegation. These emails assert that the agency violated a particular collective bargaining agreement provision by failing to remove his reprimand 2 years after its issuance. IAF, Tab 75 at 244-46. However, the appellant has not identified anything more than the assertion of both the collective bargaining provision and the associated violation. He has not, for example, directed us to the actual collective bargaining agreement or his basis for asserting that the agency had violated the same. *See Tines v. Department of the Air Force*, 56 M.S.P.R. 90, 92 (1992) (explaining that a petition for review must contain sufficient specificity to enable the Board to ascertain whether there is a serious evidentiary challenge justifying a complete review of the record); *Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133 (1980) (finding that, before the Board will undertake a complete review of the record, the petitioning party must explain why the challenged factual determination is incorrect and

identify the specific evidence in the record which demonstrates the error), *review denied per curiam*, 669 F.2d 613 (9th Cir. 1982).

¶39    A final email the appellant cited, which he sent in February 2016, contains yet another allegation that an official made knowingly false statements and obstructed justice.  IAF, Tab 75 at 449-50.  With this allegation, the appellant added some detail by attaching his own sworn statement and statements made by the official at issue in concert with one of the appellant's EEO complaints.  *Id*. at 451-69.  These documents establish that the official initially stated that he sent a particular email to the appellant, and then later corrected himself to indicate that he sent the email to someone in the appellant's chain of command.  *Id*. at 449, 457, 461, 468.  While the appellant has characterized this and numerous other statements as perjury and obstruction of justice, he has not shown that he had a reasonable belief of the same.  Instead, the appellant has merely speculated that the agency official's misstatement was more than a simple mistake and rose to the level of a criminal violation.

¶40    In conclusion, the appellant failed to meet his burden of proving that he made protected disclosures or engaged in protected activity that were a contributing factor in his removal, so his whistleblower reprisal claim is unavailing.

*Harmful error or due process violation*

¶41    The administrative judge considered but found no merit to the appellant's harmful procedural error claim—that the agency erroneously considered his 2011 reprimand in the removal action.  ID at 16.  He also considered but found no merit to the appellant's due process claim—that the deciding official was biased against the appellant.  ID at 16-17.

¶42    Although the appellant alludes to harmful error and due process on review, PFR File, Tab 1 at 24, he does not include substantive arguments about either claim.  Instead, the appellant refers to those claims in the context of an argument that appears to relate to his whistleblower reprisal claim.  *Id*. at 24-25.  Without

any persuasive support of these accusations, the appellant has failed to establish any basis for reaching a conclusion contrary to the administrative judge regarding harmful error or due process. *See, e.g., Martinez v. Department of Veterans Affairs,* 119 M.S.P.R. 37, ¶¶ 10-11 (2012) (finding that the appellant has the burden of establishing a decision maker's actual bias or an intolerable risk of unfairness to prove a violation of due process and that a deciding official's familiarity with the facts of the case and expressed predisposition contrary to the appellant's interests does not constitute a due process violation or harmful error).

## ORDER

¶43      For the reasons discussed above, we remand this case to the administrative judge for further adjudication in accordance with this Remand Order. The administrative judge may reopen the record and hold a supplemental hearing concerning the appellant's credibility and the agency's charge if the administrative judge deems it necessary to do so.

¶44      The administrative judge must issue a remand initial decision with complete credibility findings and must make a new determination about whether the agency proved its charge. If necessary, the administrative judge must also analyze whether the agency proved the requisite nexus and the reasonableness of its penalty.

¶45      To the extent that it is appropriate, the remand initial decision may incorporate the administrative judge's prior findings, as supplemented by our findings in this decision, regarding the appellant's affirmative defenses. But if argument or evidence presented on remand affects the analysis of any affirmative defense, the administrative judge should address such argument or evidence in the remand initial decision. *See Spithaler v. Office of Personnel Management,* 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of

credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

*Jennifer Everling*

FOR THE BOARD: _____

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.